GRANT, J.
Tbe following are the facts which we deem material in the review of this cause: The Adams Express Co. is a common carrier of property for hire.
The intestate of the plaintiff below delivered to the express company a human corpse for shipment to Providence, R. I., in a sealed ease or casket. The consignment was thus sent C. 0. D., and the accompanying bill to be collected and secured by the corpse, was $85.
The bill was not paid by the consignee at Providence.
The transportation eharge was paid by the shipper. After some negotiations between the parties the corpse was at last delivered to the consignee at the point of destination, notwithstanding his refusal to pay the bill.
Whereupon the intestate named commenced this action in the court below to recover the amount of the bill which accompanied the body as for a violation of his instructions to the company in failing to collect at the end of the journey, the theory of the suit being that such failure was in breach of the contract of carriage.
There was a recovery by the plaintiff below, and to reverse that judgment this proceeding is prosecuted here.
Two assignments of error are made and argued.
The first of these has to do with the admission of certain testimony, the only function of which as the defendant company contends was to vary the unambiguous terms of a written contract, but which, as his adversary says, was allowable to explain that separable part of the instrument which was a receipt merely and not a contract. Such being the point here in dispute, the *158 testimony received over objection was to the effect that the corpse in question was encased in a coffin and dressed in a shroud. The purpose of such evidence seems to have been, if we understand the drift of it- — and it could not well have had any other — ■ was to cast on the express company some sort of an obligation to strip the body of its cerements and put these on the market in fulfillment of its assumed C. O. D. obligation to realize on the bill.
There was a time when a certain individual — perhaps a forbear of some in our day — stood on the bridge at Venice and made loans on living human flesh and other collateral, but his security at least had the merit of being Uve paper; the subject, though serious for the debtor, had not the grave aspect of the question before us.
We take the long and the short of the matter to be this: A corpse, to the common apprehension — and rightly so, too — means a dead body and its coffin. To segregate the one from the other would do violence to ordinary thinking, just as much as it would offend against decency and health. To suggest that it would be the right, and much less the duty, of one having a corpse in that sense in his possession to subject it to the indignity of being stripped of its garments and exposing these to sale at public outcry or vendue, would, it should seem, put the one who did it below the condition of the Rialto man and make him a stranger to shame’s comparatively honorable blush.
And the futility of the thing also -would be its condemnation. The woman who bought the second hand gravestones did so because perhaps her daughter might marry a man of that name and then, at son-in-law’s wished-for death, she would, to use her expression — “be right in town.”
It is matter of usual observation that coffins in which bodies are conveyed to crematories are not brought back for sale or further use, but are themselves burnt.
In cases that may easily be imagined, the use of second hand coffins would be a serious menace to public health and safety. For aught that we know to the contrary, the corpse may have been that of Lazarus after four days.
Upon these considerations, and assuming but not finding, *159 that tbe testimony in question would not be obnoxious to the disability of working a variation of the terms of a written instrument, we are of the opinion that, nevertheless, it was improperly received in evidence and that its admission was manifest error.
The remaining point argued is that the judgment under review is contrary to law.
We shall dispose of this question much more briefly than do the briefs.
It is in evidence in the case that the interstate commerce commission had promulgated, and there was in consequent force, at the time of the shipment of the corpse to Providence, an official tariff or classification, which was as follows: “Corpses must not be sent C. O. D., nor with charges to collect, unless the money to pay the C. 0. D. bill, and charged for transportation, is deposited with express agent at destination, before shipment, and in such cases destination agent shall telegraph agent at shipping point as to the amount of money placed in his hands to cover the charges or to cover the C. 0. D. bill, or both, as the case may be. ’ ’
This tariff classification had the force and effect of a statute, the existence and terms of which Deutsch was bound to know. He was presumed to know also that the express company as a common carrier was not at liberty to depart from its requirements, and that if it did so it would be liable to certain penalties or penal consequences. Yet Deutsch did not observe the condition annexed to his shipment in this respect and did not see to it that the deposit required at the other end of the route was made, although there is some contradictory testimony in the record as to a promise or undertaking on the part of some one to make provision in that regard.
We do not consider it material whether there was or not any negotiations with the agent of the express company looking to the shipper being in this instance relieved from the operation of the tariff requirement on the assurance of somebody that the money would be forthcoming when the corpse reached its destination. It is enough to say that there was no duty resting on *160 the company in that respect. The duty of seeing that the deposit was provided was that of Deutseh alone.
The express company is a common carrier; not a collection agency. Whether Deutseh got his pay or not was his concern; not that of the express company.
Deptsch disobeyed that which as to him and in that case was the equivalent of positive law. If the express company was itself at fault in shipping the corpse without having evidence of the deposit at the other end of the route — and we are not saying that it was — , that fact did not exonerate Deutseh from an observance of the tariff and is quite beside the question.
We 'are of the ' opinion that the courts should leave Mr. Deutseh where he left himself and not aid him in extricating himself from that position. (
Upon the proved if not admitted facts of the case, we think the law was with the express company, for which, and not for the plaintiff below, judgment should have been given.
For the errors found the judgment under review is reversed and the cause is remanded to the municipal court of Cleveland for such proceedings there as may be in accordance with the law of the case.